Okay, good morning, gentlemen. I'm calling case number 20-30036, Ruston Louisiana Hospital v. Lincoln Health Foundation. And I will note a couple of things, points for you. First is that we ask you to mute any phones or other devices that you have so we won't be interrupted during this presentation. Second, you're not permitted to do audio or video recordings or photos, the same as would be true in New Orleans. The audio will be recorded as usual, of course. And we appreciate record citations when you can give us those. And finally, because of the unusual nature of this type of argument, we will give you each five minutes uninterrupted time at the beginning of your presentation. So with that, we will hear first from Mr. Hatcher. Thank you, Your Honor. And can everybody hear me okay? Yes. Okay, thank you. Yes. So I'm Christopher Hatcher on behalf of the appellant, Ruston Louisiana Hospital Company, LLC. And may it please the court, I'm going to go briefly through my argument and I'm happy to address questions at any time. Obviously, we're dealing essentially with cross motions on summary judgment. So I'm going to try to not retread material to the extent that I can. This appeal seeks review of the district court's granting of a motion for summary judgment for the appellee Lincoln Health Foundation, Inc. Throughout the course of my argument, I'm going to refer to Lincoln Health Foundation, Inc. as foundation and Lincoln Health System, Inc. as system. It gets a little confusing. And if I'm constantly going between LHFI and LHSI, I'm going to say foundation and system if that's okay with the court. Just to make things a little bit clearer. The district court granted LHFI, so foundation's motion for summary judgment, and denied Ruston's motion for summary judgment. We submit on appeal that that was an error, that in fact, our summary judgment was appropriate at this time. However, in the alternative, we argue that at the very least, a genuine issue of material fact exists, which should have precluded summary judgment in the favor of foundation. Going back to the facts a little bit, in February of 2007, system, but not all of its assets to Ruston. Specifically, it sold Lincoln General Hospital and the related facilities. As part of the sale, system took on certain post-closing indemnification obligations in the purchase agreement. It also provided in that agreement that the agreement and those obligations were binding on successors, heirs, and the signs. As the court is well aware, that language is very commonplace in transactions and contracts in Louisiana and throughout the 5th District. So, part of what is at issue here before the court is what happens if that language is essentially rendered meaningless for other transactions. Ten years after, well, before I guess ten years after, six months after the closing of that transaction, system dissolved. Ten years later, Ruston received for the very first time a notice from Centers for Medicare and Medicaid Services that it was being assessed over $700,000 for charges by system, which predated the 2007 sale. System would have been liable for those charges under the post-closing indemnification obligations, but it was dissolved. So, Ruston made a claim against Foundation. Foundation claims it's not liable because it's not a successor and because it was not a party to that contract. Ruston disagrees. We both file our motions for summary judgment, and then we end up here. Very briefly, our argument stems on the fact that in our opinion and under the law and of system for two reasons. One, it assumed system's liability, and two, it's a mere continuation. And we've briefed both of those issues in detail, both on our primary brief and our reply brief. There were several acts independently which we believe constitute an assumption of liability. First, in order to secure the sale, Foundation told the Louisiana Attorney General, who required this to happen for the sale to go through, that it would amend its articles, reorganize itself, and put itself on the hook for the handling of the distribution of system's proceeds, and not just their proceeds, but all of their assets in the event that they were dissolved. So, the only way this transaction happened is if Foundation said we are responsible. They did that. They did it in a writing between their members, changing their structure. They did it again in 2010 after the sale. Again, reaffirming they were responsible for distributing any proceeds or other assets and acknowledging the sale because the sale had already happened at that point. Later, they lobbied to be named the legal successor and, quote, surviving entity of system to many third parties in an effort to secure what's called the Sturgis bequest. And we briefed this at length that this is a charitable bequest to system that Foundation wanted, and now they receive. They were successful in this. Foundation's attorney told third parties over and over again, we are system's legal successor. They were successful in that, and they end up getting this money. Now, it's they're liable because they're a shareholder. That is not what we're doing. That is not what we're pleading. We're claiming they're liable because they assume liability. We're not going after any of the other shareholders. There are two other shareholders. The other shareholders were not recognized as the legal successor by the Sturgis bequest. Only Foundation has gotten this money. And so, when Foundation says we're just a shareholder, the only proceeds we ever got were sales proceeds, that is not true. They're treated very uniquely. They put themselves in a position of responsibility. They got the money. They get every benefit of being named the legal successor, yet they don't want any of the consequences for that. The lower court... Well, what is the language you cite where the Foundation assumed those obligations? That's what seems to me to... We cite several points in our brief. There are three acts. In their articles of organization, in both the 2000, I believe it's 2007, in their 2010 articles, they indicate that they will be responsible for distributing the sales proceeds and liquidated assets. Now, it's our position that when they're telling the Attorney General, when they're amending their articles to say, we're responsible for handling the distribution of that money, that includes distributing that money to people that are owed that money. There's no requirement in the law that says we have to line item where that money goes. They are saying, hey, we're going to take a big pot of money from system and we're going to distribute that money. We're going to handle managing that money. Isn't there a big difference between just assuming the responsibility of distributing assets and assuming outstanding legal liabilities? Well, that's certainly Foundation's position. That was the lower court's finding as well. We do not think that the law is that specific. And we think that when system or when Foundation includes in its articles over and over again, that it's going to be responsible. Well, what does that mean? When someone says we're going to be responsible for does that include liability? Do they have to say, hey, this includes if system owes money, we're going to pay other people that money. Now, Foundation has said there has to be a written agreement between essentially Rustin and Foundation saying we're going to be responsible for specific liability for this specific transaction. And the law is not that clear. It says that express or implied assumption of liability. And it's our position that if they're saying, hey, we're responsible for distributing these assets, including to us, which they worked really hard to be named as legal successor, they have to be responsible for paying people that are owed money. Well, I thought a successor was as the district court held was contingent on whoever purchased the assets of the hospital. That's the successor. Right. And in law. I'm sorry, Judge, I didn't mean to cut you off with Zoom. It happens all time. Only in law, the successor is the person who takes over the business. In other words, if there were a third party tort claim that arose unless the parties had contracted otherwise. They would sue Rustin Hospital, right? I think I mean, that is correct to an extent, Your Honor. However, I think it's important to the there were substantial assets that were not included in part of this transaction. And the law that you know what? I'm not too sympathetic with that, because if Rustin had felt they needed a hold back or some kind of agreement for an escrow account for a certain period of time, they could have they could have contracted for that, couldn't they? Well, and they did, Your Honor. And that's kind of the problem. So the language included indemnification obligations. There was money set aside in escrow and it was held for about three years. The problem is the nature of the underlying obligation with CMS. We did not even get notice of this for 10 years. Well, that's not that's not the foundation's problem. That's the problem of the government. Well, but it ends up being our problem because we end up paying seven hundred thousand dollars, which we had contracted for and put a scenario in there to cover it. And then when we pointed that out to foundation, they didn't say, hey, this is the reason we're not paying this is because there was a three year statute. They were saying this was a system obligation and we are not system. And it's our position. And I understand I'm running out of time here. But this this the level of control and the extreme steps that foundation took to control how this dissolution happened. And I understand the judge's point. We contracted for this. There was three years, there was an escrow. However, six months after this happened, they dissolved. And when foundation was faced with the potential of not getting this Sturgis bequest money, they specifically told and these are the same directors, it's the same chair people, it's the same controlling people in charge of both these companies. They reached out to Sturgis and said, if you're not going to give us this money and not going to say we're the legal successor, we will stop the dissolution, the dissolution. So this is foundation's attorney saying that they will stop systems dissolution because they are the legal successor and they're not going to be recognized that way. They'll merge the two companies. That is a level of control that is extreme and shows that this company, these are two hands doing the same thing. They controlled every aspect of this dissolution. And as a result, our client, my client ends up paying $703,000, which everybody agrees is owed. If they're the legal successor, they got to pay this money. Just very briefly, one, one final point about the continuing minutes. I don't know what your problem is. You've got three and a half minutes. Sure. I was trying to reserve a little time for rebuttal. You've got time reserved for rebuttal. Thank you, Your Honor. Then I won't rush. And I appreciate that. That information, Your Honor. Yeah, the clock started at 15. So. Gotcha. I understand. Thank you for that clarification. I did not understand that. On the mere continuation side of things, you'll see in the record, there's extensive evidence about the shared control of these two entities. Six out of the 10 system board members were foundation board members. Seven out of 11 foundation or system directors at the time of its dissolution were foundation directors. Shirley Reagan, who signed the dissolution for system, then went over and directly took the role as the chairperson of foundation. These foundation is system. And they funneled this money over to foundation and then washed their hands of it saying, hey, we had no control. We're just a shareholder. The law provides a remedy for legal successor and about the purchase of substantially all assets, because that's briefed I know they're going to address it. The law provides that in the event that company B purchases company A and substantially all those assets, then you look at these factors. In this scenario, we agree that the looking at those factors is appropriate. However, we do not think that the the facts don't line up. This is not a fact where foundation purchased all their assets, and we're trying to hold them accountable. We're trying to hold a company accountable that controlled the dissolution, that controlled the assets. It's all the same people. And then they get to say, well, we're not really in charge. And it does seem somewhat telling, though, that you asked for an indemnity from system suggesting that you did take over these obligations. Well, we took over the obligations to the extent that they were not covered by the contract, but we think they're covered by the contract and that that that liability stays with system. I mean, as you know, as the court knows, I'm not gonna be able to tell the United States government when they send us a bill from CMS that this is not our responsibility. We didn't even actually have the opportunity to respond. They literally took the money as a as an offset. It never even had our bank account. It's not like we wrote it. Also be argued that before you were asked to repay the money, you would receive the money instead of system. I don't know that that's the case. Well, but I suggest that is a possibility, isn't it? It is a possibility. However, the charges predated the purchase. So this was a reimbursement of that. But you still would have had the accounts receivable and to clarify the cash and accounts receivable. Well, not the accounts receivable, but the cash on hand and various other assets were specifically excluded from the transaction. So in addition, that is one. There was a pot of money on hand money that they took with them. That was not a part of the transaction. So I'm not entirely sure that that's correct. I understand my time is up. We request reversal of the lower courts decision. All right, sir. Mr. Woodard. Good afternoon, Your Honors. Russell Woodard here on behalf of the foundation. May it please the court. We respectfully submit on behalf of the foundation that the district court's ruling should be affirmed for three reasons. First, shareholders are not liable for corporate debts. Second, the foundation did not assume any of the system. Before I get into each of those points, I'd like to respond first to, I believe, Your Honor, Judge Ho. You asked for a record site to the specific basis that opposing counsel thought would provide an assumption. And for the court's convenience record, page 555 contains the joint stipulation between the parties of the amended articles in paragraph 16 and 17. And I would like not only to highlight that record site, but also the word responsibility was used a lot by counsel, and that is not contained anywhere in paragraph 16 or 17, which are the amended articles. And of course, the court can read for itself. There's likewise no assumption of any obligation between the foundation and the system. Also, Judge Jones, you are correct that every single case, the more I've dug into this, finding successor liability, every single case deals with a third party suing the buyer of substantially all of the assets. Here we have the buyer, which would be Rustin, suing the shareholder, the foundation, of the seller system. I've seen no successor liability case under any such similar scenario. I suppose Rustin has not either, as they've cited no cases. The cases Rustin has cited, the Russell and the Manzingo case, the cases we've cited, the J.D. Fields and Monroe case, all have the common theme from the inception of the litigation, the entire successor analysis begins with, did a party purchase substantially all of the assets of the predecessor? That is the threshold requirement from which the rest of the analysis flows. And so I think we really got here by accident. If you look at paragraph 21 of the foundation's complaint, they started this litigation with bad information. Paragraph 21 states that the foundation was formed after the 2007 asset purchase agreement for the purpose of administering the system's obligations. If that was true, that would seem like a plausible basis for successor liability. The problem is that's just bad information, that's false. I'm not suggesting it was a deliberate misrepresentation, it was just subject asset purchase agreement. It was formed before the system, the seller in this case. And so I bring that up just to say that from the inception of this litigation to right now, this entire successorship argument has been a creative effort by Rustin to try to put a square peg into a round hole that just does not fit. And for that reason, if you look back at what was not in the complaint two years ago, the very arguments being made today, assumption and continuation, they don't exist anywhere in the complaint. And so back to my first point, your honor, which is that shareholder protection laws in Louisiana exist for a reason. Article 219 of Title 12 reads, let me get the exact quote for your honor, that a corporation of a non-profit company shall not be held personally liable for the non-profit company's debts. And I'll remind the court that the foundation is indeed a non-profit. Louisiana has a very strong public policy to enforce Article 219. And the very activities that Rustin complains about, there are three as I understand, accepting dividends, amending its articles of incorporation, and accepting a charitable bequest. There's nothing illegal about that. That's no basis under any prior decision for successor liability. That is common basic shareholder activity. And so Rustin has made several public policy arguments in its brief saying the waterfall of litigation that will ensue if the district court's ruling is upheld. In reality, I think the scarier version is if Rustin's argument is accepted, it would transmute every single shareholder of a dissolved company to be synonymous with a quote-unquote successor. To my second point, your honor, which is that there is no successorship by assumption. Article 1821 of the Civil Code is very clear. And it states that to be enforceable by the obligee against the third person, the assumption agreement must be made in writing. In comment E goes further and states under this article, an assumption must be made in writing to be enforceable by the obligee against the third person. Which provision of the Civil Code is that? That is article 1821. Okay. And then comment E was the second part that I referenced. All right. And so taking out obligee and third party and plugging that in here, that means Rustin must show to this court a written agreement between the foundation and the system where the foundation clearly and expressly agreed to assume the system's obligations. No such document exists here. And I would even go further and say, I believe Rustin has admitted that no such document exists here. If you turn to record page 555, the joint stipulations, and I hammer that it's joint stipulations because this was not a stray remark by a corporate representative who got just worn down in a deposition. This was through a document that was carefully and deliberately drafted knowingly and intelligently between council before it was signed by the very council making the argument for us in here today. Paragraph 18 system did not execute any written instrument whereby it assigned to the foundation any of systems obligations pursuant to the agreement. Paragraph 19. There is no specific written assumption agreement with both system and the foundation as party signatories. Those two paragraphs effectively rule out the possibility for any assumption under 1821. Nevertheless, Rustin has pointed to two writings, the amended articles, which I referenced for Judge Ho earlier, and the Sturges bequest. Neither of those writings mentioned assuming any debt, let alone expressly assuming the debts owed under the asset purchase agreement. And as the district court correctly recognized, neither of those writings even constitute an agreement. And of course, to have an assumption under 1821, you have to first have an agreement. 1906 of the civil code states a contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. And so I bring up that just black letter horn bet horn book law to emphasize that these amended articles that have one party, the foundation, the Sturges correspondence that have one party, the foundation, they don't even constitute an agreement, let alone a clear assumption agreement. And my third and final point for my co-counsel, Mr. Jones takes over. The foundation is likewise not a successor by continuation. Again, as Judge Jones, you noticed at the outset of opposing counsel's argument, the threshold requirement for successorship by continuation is a purchase of substantially all is the foundation, not a continuation of the system. The exact opposite is true. It is Rustin who is the continuation of the system. On record 553, 553, again, joint stipulation on a read four, excuse me, yes, four paragraphs. Paragraph five, Rustin took over the operation of the hospital and continued hospitals operations pursuant to the agreement. Paragraph six, Rustin purchased substantially all of the operating assets that system utilized in connection with its operation of the hospital. Seven, the foundation did not purchase any of systems assets under the agreement, and it has not purchased any of systems assets since the agreement was executed in 2007. And finally, paragraph eight, the foundation itself did not continue to operate the hospital after April one of 2007. Revisit that again. Paragraph eight on 553, the foundation did not continue to operate the hospital after April one of 2007. On the joint stipulation, you've got, they did not continue to operate the business. Now in briefing and oral argument, they're saying otherwise. I see my time has expired. I'll defer to my co-counsel. Okay, Mr. Jones. I am Bill Jones for the foundation. Good afternoon. It's the first time I've conducted oral argument by Zoom, so we'll see how we do. I would like to make one observation and then solicit questions from the court if they have any. Ruston knew that the system was going to dissolve when it sold Ruston all of its hospital, its operations, and all the assets in connection with the operation of the hospital. If we look at the asset purchase agreement, and this is found on the record on appeal, page number 677, it is paragraph 1.1k of the asset purchase agreement. Whereby Ruston purchased all the trade names and legal names of the system in connection with its asset purchase. And if you'll note the phrase, however, Ruston would allow the system to use its name in connection with the winding up of its affairs after the closing, which of course is normally what happens when a company sells all of its assets. There's nothing left for it to do other than distribute proceeds to the stockholders and dissolve. Now, Ruston was a sophisticated purchaser. It's wholly owned by Community Health Systems, which is the largest for-profit hospital publicly traded company in the country. The risk of pre-closing obligations coming back on the purchaser was well-known to the purchaser, Ruston. They negotiated a three-year escrow agreement whereby they escrowed one half of the purchase price to cover any indemnification obligations. Ruston and CHS are well aware of CMS and cost reports. They judged this a risk that contractually they were willing to take. If they had judged it a risk that they didn't want to take, they would have negotiated for various other things, such as making the stockholders guarantors of the system's assets. They did not do that. They could have negotiated for a longer escrow period, for example. The fact is this. What Ruston is attempting to do in this lawsuit is get this Court of Appeal to retroactively amend the asset purchase agreement to make the foundation a stockholder, the guarantor of the corporation's debts. That's what they're trying to do with this litigation. That would not only be unfair and inequitable, it would also be in contravention of clear Louisiana law that states that stockholders of non-profit corporations are not liable for the corporation's debts. With that, if the court has any questions, I would certainly be willing to try to answer them. Mr. Jones, I don't think so. Thank you. I thank the court for its time and attention to this matter. We'll turn the matter back to Mr. Hatcher for rebuttal. Thank you, Your Honor. Very briefly, the court asked earlier for record sites about the language that we're referring to about assumption of liability. Specifically, we're referencing the amended articles both in 2007 and 2010. I referenced record of appeal number 364 and 372. The court looks at those two pages of those amended articles. Those were the pages I was referring to. Notably, appellee counsel mentioned the fact that there's an allegation about the foundation being organized for purposes related to the system. That was not an error. That is based on their own articles. The reason it's in there is because they reorganized themselves completely. I understand that the existence of the entity predated that. In 2007 and 2010, they declared amongst themselves and to the state of Louisiana, in order to ensure this happened, their purpose was to support LHSI and to distribute its assets and the proceeds of this sale. That's the reason that's in there. The whole point of this company was to do the thing that we're trying to hold it accountable for now. To that point, the counsel repeatedly talked about we're trying to amend the contract to hold shareholders responsibility and it's going to have all this fallout. That is not what's happening here. We're trying to hold foundation responsible for its extraordinary role in systems dissolution and the aftermath. As far as 10 years after systems dissolution, foundation board members were sitting around having meetings about the CMS notice, about systems obligations, about the skeleton board and what they could do to either reduce or avoid liability for system and for themselves. This is 10 years after system was already dissolved. If this had occurred, if this Centers for Medicare had come back with this overcharge claim within one or two years after the transaction, is it not likely that you might have argued something about piercing the corporate veil and gone after all the shareholders? No, I don't think we would have needed to at that point, the money would have been in escrow for that purpose. What's really interesting is what would have happened, who would we even have sent the demand to? Because the money was set in escrow, but system had already dissolved. Where would we even send the request? The money was set aside and presumably they would honor their obligation, system was winding up and foundation was involved, but it's very interesting because they were gone. The whole argument is that the entity doesn't exist. The claim then wouldn't have been after the shareholders, it would have been after the content of the escrow. We're not trying to hold the shareholders responsible beyond the requirements of system. What we're trying to say here is that foundation and system have a unique relationship. They orchestrated this dissolution and they continued to control systems obligations for years and years and years afterwards. That's not normal shareholder behavior. What's your best case in support of the propositions that you're arguing? The best case, well we reference, I believe it's the Monroe case, but in our reply brief you'll see we reference several third and fourth district cases out of the state of Louisiana. We're referencing they are applying the mere continuation doctrine. They're not looking at those eight specific factors, but they're looking at a general, who are the shared members, who are the shared officers, those cases. If we, the judges, don't think it's fair for them to keep this money irrespective of contract rights and so on, we can say they're a mere continuation. I believe so, your honor. What you're asking us to do? Yes, your honor. Alternatively, at the very least, we would argue that there is a genuine issue of material fact on this issue. There is extensive evidence that was considered by the lower court, and the lower court ended up siding with foundation. We obviously had cross motions. We would request, and we think it is appropriate for this court to reverse and grant in our favor. However, we think at the very least, there's substantial evidence here that shows that this is a contentious issue. It's a genuine issue of material fact, and as such the lower court's judgment was inappropriate. All right. Unless you have any other questions, I have no additional comments for the court. I don't think so. Thank you very much. The court will stand in recess until 9 30 tomorrow morning.